RETIRED PUBLIC EMPLOYEES' AS-
SOCIATION OF CALIFORNIA CHAP-
TER 22; Oakland Retired Employees'
Association; and Mrs. Winofred White,
Plaintiffs/Appellees,

v.

STATE OF CALIFORNIA; State Person-
nel Board of the State of California;
Board of Administration of the Public
Employees Retirement System; Retire-
ment Board City of Oakland, Defend-
ants-Appellants.

RETIRED EMPLOYEES' ASSOCIATION
OF CALIFORNIA, CHAPTER 22; Oak-
land Retired Employees' Association;
and Mrs. Winofred White, Plain-
tiffs/Appellees,

v.

STATE OF CALIFORNIA; State Person-
nel Board of the State of California;
and the Board of Administration of the
Public Employees' Retirement System,
Defendants-Appellants.

Jacob B. GUNN, on behalf of himself
and all persons similarly situated,
Plaintiff/Appellee,

v.

STATE OF CALIFORNIA; State Person-
nel Board of the State of California;
and the Board of Administration of the
Public Employees' Retirement System,
Defendants-Appellants.

Nos. 84–2808, 85–1897 and 85–1898.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1986.

Decided Sept. 9, 1986.

Fred D. Lonsdale, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiffs/appellees.

Robert E. Murphy, Deputy Atty. Gen., San Francisco, Cal., Patricia L. Campbell, Oakland, Cal., for defendants/appellants.

Before NELSON, CANBY and JOHN T. NOONAN, Jr., Circuit Judges.

NELSON, Circuit Judge:

Defendant-appellant, the State of California, appeals that part of the district court's judgment in favor of the plaintiff-class enjoining California from using sex-based mortality tables to calculate monthly pension benefit payments for employees retiring before January 1, 1977, directing that equalization of benefits be retroactive to April 25, 1978, and awarding attorneys' fees, 614 F.Supp. 571. California argues that this judgment contravenes Supreme Court and Ninth Circuit decisions denying retroactive relief in pension cases. We have jurisdiction under 28 U.S.C. § 1291 (1982), and we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-class of public employees sued the State of California for sexually discriminatory payment of retirement benefits in violation of Title VII, 42 U.S.C. § 2000e (1982). The class consists of all members of the California Public Employees Retirement System ("PERS") who retired before January 1, 1977, and who are now receiving lower monthly retirement benefits than similarly-situated male retirees.

The PERS plan, which is completely State operated, is funded from three sources: (1) employee contributions based on a fixed percentage of salary; (2) employer contributions; and (3) investment income earned by the pension system. Upon retirement, the plan pays a benefit based on the employee's salary at the time of retirement, years of service, and age at retirement. Until January 1, 1977, the benefit also depended on the sex of the retiree. Because women, as a group, live longer than men as a group, women retiring after age sixty received lower monthly benefits than similarly-situated men in order to equalize the total lifetime payment. On January 1, 1977, California voluntarily amended this plan to eliminate gender as a consideration in the determination of benefits for those retiring after that date. However, those retiring prior to that date continue to receive their benefits based on the old plan. Thus, those women retiring before 1977 continue to receive lower monthly benefits than similarly-situated males.

When the case first came before the district court, the court granted summary judgment in favor of the plaintiff-class, and ordered the State to increase the benefit levels of the class retroactive to the date of the Supreme Court's decision in *City of Los Angeles v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), in which the Supreme Court held that requiring women to make greater contributions to pension funds violated Title VII. Our court affirmed the district court's judgment and remedy as to all plaintiffs who retired after March 24, 1972, the date Title VII became applicable to public employees. *Retired Public Employees' Ass'n v. California*, 677 F.2d 733 (9th Cir.1982). We rejected California's argument that *Manhart* prohibited the retroactive relief which the district court had awarded. The Supreme Court, however, granted certiorari, vacated the judgment, and remanded the case for further consideration in light of its decision in *Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983). 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983).

On remand, the district judge found that *Norris* did not require any alteration in the prior decision, either as to liability or remedy. Distinguishing between the plan at issue in *Norris* and the PERS plan, the district court enjoined California from using sex-based mortality tables to calculate monthly payments, required California to equalize the benefits paid by raising the monthly benefits of females to the level of similarly-situated male retirees without reducing any benefits to any PERS members, and directed that such payments be retroactive to April 25, 1978, the date of the *Manhart* decision. The district court also awarded attorneys' fees to the plaintiff-class. Judgment was entered March 28, 1985.

California filed this timely appeal April 16, 1985.

## STANDARD OF REVIEW

We review the district court's award to determine whether the district court abused its discretion. *Norris,* 463 U.S. at 1105, 103 S.Ct. at 3510.

## DISCUSSION

In *City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court held that an employer violates Title VII when it requires women to contribute more than men to a pension fund in order to receive the same level of benefits. Despite the valid generalization that women, as a class, live longer than men, the Court found that an unequal contribution requirement contravenes the statute's prohibition of discrimination against individuals. *Id.* at 707–08, 98 S.Ct. at 1374–75. Thus, the Supreme Court affirmed the finding of liability under Title VII.

However, the Supreme Court reversed the order that the employer refund all excess contributions made before the amendment of the plan. The Court reasoned that pension administrators reasonably could have thought that their pension plans were legal. *Id.* at 720, 98 S.Ct. at 1381. In addition, the Court was concerned about "the potential impact which changes in rules affecting insurance and pension plans may have on the economy." *Id.* at 721, 98 S.Ct. at 1382. Thus, while leaving intact the injunction against the continuing practice of requiring unequal contributions, the Court struck down any refund of contributions to the plaintiffs.

In *Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), the Supreme Court examined the use of gender distinctions in connection with the other end of the pension system: payment of benefits. Under the *Norris* plan, for those employees selecting an annuity option, "the amount of the employee's monthly [retirement] benefits depend[ed] upon the amount of compensation that the employee deferred (and any earnings thereon), the employee's age at retirement, and the employee's sex." *Id.* at 1077, 103 S.Ct. at 3495. A five-justice majority held that this option, under which private insurers paid women lower monthly benefits than men who had deferred the same amount of compensation, violated Title VII. The Court first reasoned that had the public employer operated the plan itself without the participation of private insurers, the employer would clearly have violated Title VII: "*Manhart* squarely rejected the notion that, because women as a class live longer than men, an employer may adopt a retirement plan that treats every individual woman less favorably than every individual man." *Id.* at 1083, 103 S.Ct. at 3498. The majority then held that the plan was not "beyond the reach of the statute because it is the companies chosen by petitioners to participate in the plan that calculate and pay the retirement benefits." *Id.* at 1086, 103 S.Ct. at 3500. Although the insurance companies may offer sex-based annuity benefits, "[o]nce the State selected these companies, ... [it became] legally responsible for the discriminatory terms on which annuities are offered by the companies chosen to participate in the plan." *Id.* at 1089, 103 S.Ct. at 3501–02.

However, a separate five-Justice majority struck down the injunction requiring the employer to equalize the future benefits paid to *already retired female employees.*[1] First, the majority reasoned that even though the injunction affected only future benefits, the relief was fundamentally retroactive in nature. The Court then noted that given *Manhart*'s express confirmation that employers could set aside equal contributions and let each retiree purchase whatever annuity was available in the mar-

---

1. Unlike in the present case, the district court in *Norris* had refused to award retroactive damages for benefit payments made prior to its decision. The plaintiffs did not appeal this ruling. 463 U.S. at 1079 n. 5, 103 S.Ct. at 3507 n. 5.

ket, "an employer reasonably could have assumed that it would be lawful to make available to its employees annuities offered by insurance companies in the open market." *Id.* at 1106, 103 S.Ct. at 3510. The Court limited relief to requiring "that benefits derived from contributions collected after the effective date of our judgment be calculated without regard to the sex of the employee." *Id.* at 1111, 103 S.Ct. at 3513 (footnote omitted). Thus, women who retired before the decision, and who therefore had made all of their contributions before the decision, received no relief.

In granting relief in the present case, the district court relied on a variety of distinctions in order to avoid what, in light of *Manhart* and *Norris*, seems to be clear Supreme Court disapproval of retroactive relief in pension cases. The court first found that requiring California to raise benefits of women retiring before 1977 would not be retroactive relief at all due to the nature of the PERS plan. The court reasoned that because PERS benefits do not depend, as they did in *Norris*, on the specific amounts each employee has contributed, but depend on years of service and final salary, "relief requires no adjustment to contributions made prior to *Manhart....*" Thus, *Norris* does not preclude the injunction, which is wholly prospective relief. The district court then reasoned that making the award of equalized benefits retroactive to *Manhart* was appropriate for three reasons: (1) *Manhart* put California on notice that use of sex-based actuarial tables violates Title VII; (2) any increased burden therefore is not unanticipated; and (3) the cost burden is not prohibitive in this case.

These distinctions fail in light of our recent decision in *Probe v. State Teachers' Retirement System,* 780 F.2d 776 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). *Probe* involved a pension plan very similar to the PERS plan. The plan was funded by em-

ployee contributions, employer contributions, and investment income. *Id.* at 778. Upon retirement, an employee could elect to receive an "unmodified allowance," which was computed on the basis of the highest compensation, years of service, and retirement age. *Id.* Alternatively, an employee could select either of two options, both of which were based on the present value of the unmodified allowance. Thus, as in the present case, an employee's level of retirement benefits bore no relation to the amount of his or her contributions to the plan.[2] In calculating present value, sex-based mortality tables were used. The present value of a man's allowance was less than that of a similarly-situated woman because women as a group outlive men. *Id.* at 778–79. We found that these two options discriminated against men in violation of Title VII. *Id.* at 781–82.

Regarding the appropriate relief, we held in *Probe* that enjoining the payment of all further benefits by reference to sex-based actuarial tables was impermissibly retroactive notwithstanding the lack of any relationship between the amount of contribution and the level of benefit in the retirement plan at issue. *Id.* at 783. Citing *Norris,* we reasoned that "[b]ecause these annuity payments are *funded* by past contributions from the employee, state, and school districts, the relief ordered here, affecting all benefit payments made after the district court's judgment, is fundamentally retroactive in nature." *Id.* at 782 (emphasis added). We also reasoned that until *Norris,* the employer "reasonably could have assumed that it was lawful to provide an optional annuity system that reflected plans offered by insurance companies on the open market." *Id.* at 782–83. It was not until *Norris* that "employer-operated pension funds [were put] on notice that they could not determine monthly retirement benefits by reference to sex-segregated mortality tables." *Id.* at 783. Thus, we held that benefits derived from contributions made prior to *Norris* could be calcu-

---

**2.** Employees could also withdraw their contributions. Few chose this option, however, because it led to forfeiture of any entitlement to

contributions made by the employer on the employee's behalf. *Probe,* 780 F.2d at 782.

lated under the old, sex-based plan; only benefits derived from post-*Norris* contributions had to be recalculated without regard to sex. *Id.*

*Probe* is dispositive of the case now before us. Under *Probe*, despite the fact that the level of PERS plan benefits is not tied to the amount of contributions, the injunction issued is fundamentally retroactive because all benefit payments are funded in part by past contributions from employees and the employer. Furthermore, *Probe* suggests that California was not on notice until *Norris* that it could not use sex-based actuarial tables in calculating retirement benefits. We need not decide whether *Norris* is the appropriate benchmark for determining when California was on notice, however, for under any reading of the relevant cases, at a minimum, California was not on notice until *Manhart*. Thus, the most the district court could have required is that California recalculate benefits derived from contributions made after the *Manhart* decision in 1978.[3] Since all of the plaintiffs ceased contributing to PERS before 1977, none of them is entitled to have their benefits recalculated.

The result *Probe* directs comports with the intent expressed by a majority of the Supreme Court in *Manhart* and *Norris*. Writing for the *Norris* majority on the relief issue, Justice Powell stated:

> Annuity payments are funded by the employee's past contributions and represent a return on those contributions. In order to provide women with the higher level of periodic payments ordered by the District Court, the State of Arizona would be required to fund retroactively the deficiency in past contributions made by its women retirees.

*Id.* 463 U.S. at 1105 n. 10, 103 S.Ct. at 3510 n. 10. This language clearly illustrates that the key concern of the *Norris* majority with respect to relief is whether sums collected to support a predicted level of bene-

fits later must support a higher level. These justices feared the "devastating results" of "imposing such unanticipated financial burdens." *Id.* at 1106–07, 103 S.Ct. at 3511. As explained in *Manhart*, pension plans,

> like other forms of insurance, depend on the accumulation of large sums to cover contingencies. The amounts set aside are determined by a painstaking assessment of the insurer's likely liability. Risks that the insurer foresees will be included in the calculation of liability, and the rates or contributions charged will reflect that calculation. The occurrence of major unforeseen contingencies, however, jeopardizes the insurer's solvency and, ultimately, the insureds' benefits. Drastic changes in the legal rules governing pension and insurance funds, like other unforeseen events, can have this effect.

435 U.S. at 721, 98 S.Ct. at 1382. The district court's order in the present case would impose such an unanticipated financial burden.

Furthermore, in neither *Norris* nor *Manhart* did the Court question whether relief would jeopardize the particular plan at issue. Rather, in both decisions, the Court specifically rejected this approach, and premised its retroactivity holding on a concern about the fate of pension plans in general. Thus, in *Manhart*, the Court stated:

> [W]e cannot base a ruling on the facts of this case alone.... [E]quitable remedies may be flexible but they still must be founded on principle. "Important national goals would be frustrated by a regime of discretion that 'produce[d] different results for breaches of duty in situations that cannot be differentiated in policy.'"

435 U.S. at 722 n. 42, 98 S.Ct. at 1382 n. 42 (citations omitted). Similarly, in *Norris*, the majority discussed in general terms the

---

**3.** Thus, California's voluntary amendment to PERS in 1977 actually goes further than the relief the district court could have ordered. For those retiring after January 1, 1977, all benefits, including those derived from pre-*Manhart* con-

tributions, are calculated on a gender-neutral basis. Consequently, even those retiring before *Manhart* receive completely equalized benefits so long as they retired after January 1, 1977.

dangers of retroactive liability which led the Court to limit recovery:

> As in *Manhart,* holding employers liable retroactively would have devastating results. *The holding applies to all employer-sponsored pension plans,* and the cost of complying with the District Court's award of retroactive relief would range from $817 to $1,260 million annually for the next 15 to 30 years. Department of Labor Cost Study 32. In this case, the cost would fall on the State of Arizona. Presumably other state and local governments also would be affected directly by today's decision. Imposing such unanticipated financial burdens would come at a time when many States and local governments are struggling to meet substantial fiscal deficits. Income, excise, and property taxes are being increased. There is no justification for this Court, particularly in view of the question left open in *Manhart,* to impose this magnitude of burden retroactively on the public.

463 U.S. at 1106–07, 103 S.Ct. at 3510–11 (footnote omitted) (emphasis added). Thus, under these cases, the relief in the present case is impermissibly retroactive in requiring sums collected to support a planned level of benefits to support a higher level.

Finally, we draw support for our conclusion from the Second Circuit's decision in *Spirt v. Teachers Ins. and Annuity Ass'n,* 735 F.2d 23, 26 (2d Cir.), *cert. denied,* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). In discussing the question of retroactivity, the Second Circuit stated: "In *Norris,* the Supreme Court made clear that it considers a judgment in a Title VII pension benefit case to have retroactive effect when that judgment, though applicable only to persons retiring after its date, affects a portion of benefits attributable to contributions made prior to its date." *Id.* at 26. The court reasoned that the premise of the *Norris* ruling against retroactivity was "that the equalization of women's benefits requires the employer or the plan *to pay out extra sums of money...." Id.* (emphasis added). In granting relief which lowered men's benefits and raised women's benefits while leaving unchanged the total benefit payout, the court stated that in *Norris,* "we see only a prohibition of relief provisions that impose *added financial burdens* on employers or plans."[4] *Id.* at 28 (emphasis added). In the present case, the district court's order imposes an added financial burden by requiring California to equalize the benefits of women retirees without reducing the benefits of anyone else. Thus, under *Norris,* as interpreted by both *Probe* and *Spirt,* the relief ordered in the present case is impermissibly retroactive.

## CONCLUSION

The district court abused its discretion in ordering that California equalize all future retirement benefits for those retiring before January 1, 1977, and in making this holding retroactive to the decision in *Manhart.* Since all of the plaintiffs retired prior to January 1, 1977, they are entitled to no relief. Accordingly, we reverse the district court's decision. In light of our holding, we remand to the district court for it to reconsider the award of attorneys' fees.[5]

---

4. In *Spirt,* the district court had refused to give any relief to those retiring before the date of its decision; indeed, no one even asserted that it should. 735 F.2d at 26. The only issue in *Spirt* was the legality of equalizing benefits for those retiring after the date of the district court's decision, including benefits derived from pre-*Manhart* contributions. This relief, which the Second Circuit approved, is precisely that which California voluntarily adopted in the present case as of January 1, 1977.

5. Respondent claims that the award of attorneys' fees should be left intact regardless of the panel's decision because California has failed to appeal this issue. While it is true that California did not raise the issue of fees in its opening brief, the notice of appeal makes clear that California was appealing the award. The notice states that the "Defendants appeal from all aspects of th[e] judgment including particularly ... the award of attorney's fees to plaintiff." California does not contest the amount of fees, but only the award of fees if this panel finds that appellees should not prevail.