**Bessie HANNAHS, Plaintiff,**

v.

**NEW YORK STATE TEACHERS' RETIREMENT SYSTEM; Kenneth E. Buhrmaster, Hiram Korpeck, Nicholas Maletta, Frank Wells McCabe, Ellis Ostrove, Richard E. Ten Haken, Carl Fredeen, Roderick Sager and Margaret Mary Walsh, individually and as members of the New York State Teachers Retirement Board; Albert B. Lewis, individually and as Superintendent of the New York State Insurance Department; Spiro Bellow, Margaret Johnson, Angelo Papa, Thomas Terwilliger, Sheridan Hardenburg, Ralph Rasmusson and J. Ronald Seasted, individually and as members of the Board of Education of the Jamestown Public Schools, Defendants.**

**No. 78 Civ. 2541–CSH.**

United States District Court, S.D. New York.

March 9, 1987.

Janet Axelrod, Asst. Counsel, New York Educators Ass'n, Albany, N.Y., and Deborah Watarz, New York City, for plaintiff.

Shea & Gould, New York City (Martin I. Shelton, Dean G. Yuzek and Peter C. Neger, Shea & Gould, New York City, George K. Bernstein, Washington, D.C., Karl E. Nisoff and David A. Weiss, New York State Teachers' Retirement System, of counsel), for defendants New York State Teachers' Retirement System and Kenneth E. Buhrmaster, et al.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Melvyn R. Leventhal, First Deputy Asst. Atty. Gen., Brenda S. Spears and Judith T. Kramer, Asst. Attys. Gen., of counsel), for defendant Superintendent of New York State Ins. Dept.

Johnson, Peterson, Tener & Anderson, Jamestown, N.Y. (John K. Plumb, of counsel), for "Jamestown" defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Bessie Hannahs, a retiree from teaching in the public school system in Jamestown, New York, brought this action to challenge as discriminatory the use of sex-differentiated actuarial tables in calculating the amount of monthly benefits a public school teacher receives upon retirement. The identity and status of the several defendants, and plaintiff's theories of liability against them, are detailed in this Court's opinion reported at 26 FEP Cases 527 (S.D.N.Y.1981), familiarity with which is assumed. All defendants had moved, on various grounds, to dismiss the complaint or for summary judgment. I granted de-

fendant Lewis's motion to dismiss the complaint as to him; and denied or reserved judgment on the summary judgment motions of the NYSTRS defendants and Jamestown defendants.

Those defendants have recast and renew their motions for summary judgment. They now base them on intervening higher authority: *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), and *Spirt v. Teachers Insurance and Annuity Association*, 735 F.2d 23 (2d Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984) (*"Spirt II"*). The Supreme Court generated *Spirt II* by vacating the Second Circuit's decision in *Spirt v. Teachers Insurance and Annuity Association*, 691 F.2d 1054 (2d Cir.1982) (*"Spirt I"*) and remanding the case "for further consideration in light" of *Norris. Long Island University v. Spirt*, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983).

There can be no question after *Norris* that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits the use of gender-based mortality tables in calculating the amount of monthly benefits retired New York State public school teachers are entitled to receive. That is the liability issue with which Justice Marshall dealt in *Norris* at 463 U.S. at 1076–1091, 103 S.Ct. at 3495–3503. The determinative issue on the recast motion of the defendants at bar is the appropriate remedy, an issue Justice Powell dealt with in Part III of *Norris* at 1105–1107, 103 S.Ct. at 3510–3511, and the Second Circuit was obliged to reconsider in *Spirt II.*

The defendants say that, on a proper reading of *Norris* and *Spirt II*, viewed through the prism of *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), where it all began, and giving consideration to the post–1983 steps the NYSTRS has taken to implement *Norris*, plaintiff has received all the benefits to which she is entitled by law, so that summary judgment should enter.

The most recent submissions of counsel debate at length (a) what the Supreme Court in *Norris* meant about the remedy issue; and (b) what the Second Circuit in *Spirt II* meant about what it thought the Supreme Court meant in *Norris*.

For the reasons which follow, I grant the defendants' motion for summary judgment and dismiss the complaint.

### I.

■ As a district judge, I am not at liberty to give the Supreme Court's fragmented opinion in *Norris* an unsupervised reading. I must read *Norris* as the Second Circuit reads *Norris* in *Spirt II*, at least to the extent that (1) I understand what *Spirt II* is saying, and (2) its rationale applies to the facts at bar.

Having said that much, I agree with defendants that *Norris* forbids any retroactive relief in the circumstances of the case at bar.

Justice Powell observed with concern that retroactive relief in *Norris* would impose additional costs upon the State of Arizona. He held for the Court that "liability should be prospective only," 463 U.S. at 1107, 103 S.Ct. at 3511; and, in footnote 12 (dropped from the text at that point), expressed his and the Court's agreement "with Justice O'Connor that only benefits derived from contributions collected after the effective date of the judgment need be calculated without regard to the sex of the employee." Justice O'Connor, echoing concerns expressed in *Manhart, supra,* 435 U.S. at 722–723, 98 S.Ct. at 1382–1383, wrote in her concurring opinion in *Norris* that "[t]his real danger of bankrupting pension funds requires that our decision be made prospective." *Id.,* 463 U.S. at 1110, 103 S.Ct. at 3513.

The effective date of the *Norris* judgment is August 1, 1983. It becomes the watershed date for structuring relief.

*Manhart* and *Norris* voice broad concerns, rooted in policy, and clearly intended by the Court to apply to all comparable plans. Thus the Second Circuit in *Spirt II*, having quoted as I have done from Justices

Powell and O'Connor, wrote that "[t]he premise of the *Norris* ruling against retroactivity" is "that equalization of women's benefits requires the employer or the plan to pay out extra sums of money," 735 F.2d at 26. Precisely because that is so, the Second Circuit's perception in *Spirt II* is that "*Norris* appears to foreclose any possibility of the retroactive imposition of added financial burdens upon employers or plans," *id.* at 29.

*Norris* did not preclude retroactive relief in *Spirt II,* the Second Circuit held, "because of the fundamental difference between the plan in *Norris* " and the arrangements involved in *Spirt II.* 735 F.2d at 26. Arizona's annuity plan, considered in *Norris,* provided "sufficient certainty concerning the amount of annuity payments" to permit calculation of a monthly amount." *Ibid.* "It was this expectation of a determinable benefit," Judge Newman says in *Spirt II,* "that the Supreme Court majority in *Norris* did not wish to have jeopardized by imposing added financial burdens on the plan." *Norris,* in the Second Circuit's view, did not intend to bar retroactivity in all cases; "[i]nstead, we see only a prohibition of relief provisions that impose added financial burdens on employers or plans." *Id.* at 26–28.

Those concerns did not arise in the *Spirt* litigation because each of the two plans in question, "reflecting primarily the experience of the securities" in the plans' portfolios, "guarantees plan participation no specified amount of monthly payments." *Spirt II* at 23, quoting *Spirt I* at 691 F.2d 1068–69.

In Justice O'Connor's words in *Norris,* "many working women have based their retirement decisions on expectation of a certain stream of income during retirement. These decisions depend on the existence of adequate reserves to fund these pensions." 463 U.S. at 1110, 103 S.Ct. at 3513. The essence of the *Spirt II* plans did not fall within *Norris's* prohibition of costly retroactive relief because they did not guarantee retirees "a certain stream of income." Therefore, with the exception of

one modification, the Second Circuit adhered to the retroactive relief it sanctioned in *Spirt I.*

But that modification is significant. At 735 F.2d 28–29, Judge Newman wrote:

In one minor respect, however, we think it would be prudent to modify our prior decision. Though the benefit level for TIAA participants depends primarily on the investment success of the TIAA portfolio, TIAA guarantees that benefit levels will reflect at least a 2½% return on investments. In our prior decision, we noted that this minimum guarantee was so low "that there is no danger that the male participants' expectation that they will receive the minimal guaranteed benefit will be jeopardized by the relatively minor changes ... necessitated by the relief ordered." 691 F.2d at 1068. We still consider the likelihood that TIAA will fail to earn 2½% on its investment to be an insignificant risk. However, since *Norris* appears to foreclose any possibility of the retroactive imposition of added financial burdens upon employers or plans, we will direct the District Court to modify its judgment to provide that unisex tables need not be used in calculating the portion of benefits attributable to pre-judgment contributions to whatever extent may be necessary in any year to ensure that the use of such tables will not impose added financial burdens upon the employer or TIAA beyond those resulting from the obligation to pay benefits reflecting a 2½% return on investment.

This passage makes crystal clear the Second Circuit's recognition that where a *guaranteed* payment may be identified, *Norris* precludes retroactive relief based on unisex tables which would impose a financial burden upon the plan.

In other words, both in what it permits and what it prohibits, the Second Circuit's interpretation of *Norris* precludes retroactive relief in the case at bar.

The annuity portion of the NYSTRS plan[1] is a classic annuity system which

---

1. In addition to the annuity component of the

teacher's retirement allowance, challenged by

generates predictable monthly payments in amounts calculated to a certainty by a set mathematical formula. It is the sort of plan which falls within the *Norris* rationale. Retroactive relief would cost the plan very significant sums. NYSTRS has no existing reserves with which to bear the costs of a retroactive change from the previously used sex distinct actuarial tables. These facts are established beyond peradventure of doubt by the affidavit of Albert Alazraki, the NYSTRS actuary. Plaintiff submits an affidavit of a consulting actuary, Richard Roeder, which quarrels with the completeness of some of Alazraki's calculations and challenges certain conclusions as speculative. I do not regard the Roeder affidavit as sufficient to demonstrate, in the words of the summary judgment rule, a "genuine issue" as to the "material" (not, decisive) fact[2] that retroactive relief would be of great cost and prejudice to a retirement plan structured to guarantee retirees specified amounts of monthly payments.

Plaintiff has no entitlement to retroactive relief.

## II.

The unavailability of retroactive relief would not foreclose summary judgment if, on this record, plaintiff was still entitled to some relief. That brings us to a consideration of the post–1983 steps the NYSTRS has taken to implement *Norris*.

Defendants say that "[i]mmediately following the Supreme Court's decision, NYSTRS proceeded to develop new mortality tables, together with procedures for their implementation, which strictly complied with the *Norris* decision." Main brief at 16.

In computing retirement benefits derived from contributions and/or accruals occurring on or after August 1, 1983, the NYSTRS uses newly developed merged gender mortality tables. The annuity portion of the retirement allowance is derived

from contributions the member has made to his or her annuity fund account and the interest credited thereon. In purported obedience to *Norris*, NYSTRS's current practice is described by Lawrence A. Johnson, its actuarial manager, as follows:

"... when NYSTRS now computes the annuity portion of a retiree's retirement allowance it separates the retiree's total contributions into contributions (including interest thereon) made prior to August 1, 1983, and contributions (including interest thereon) made on or after August 1, 1983. The annuity payable on the former is computed based upon existing sex-distinct mortality tables and the annuity payable on the latter is based upon the newly adopted merged gender mortality tables."

Affidavit at ¶ 8.

The pension portion of the retirement allowance, sex neutral, "is provided pursuant to a defined benefit plan under which the retiree receives a percentage of his or her final average salary for each year of service." *Id.* at ¶ 5. The governing statute, N.Y. Education Law § 513; Retirement and Scoial Security Law, §§ 447, 610, provides members with the right to elect certain options on their retirement allowances. The nature of the options, and their post-*Norris* treatment, are described in the Johnson affidavit at ¶ 6.

These options, which provide a benefit upon the death of the member and are computed on the entire retirement allowance (including both the annuity and pension portion) are in the nature of life insurance on the life of the retiring member. A retiree's maximum retirement allowance is reduced to provide this "life insurance" benefit. For purposes of benefits derived from contributions and/or accruals prior to August 1, 1983, this reduction is actuarially computed based upon the respective age and sex of the retiree and the beneficiary. Options based upon benefits derived from contri-

---

this action, there is also a pension component of the overall N.Y.S.T.R.S. retirement plan which is based on percentages of salary and years of service. It is totally sex neutral and not impli-

cated in this litigation. Alazraki affidavit ¶ 7; affidavit of Lawrence A. Johansen at ¶ 5.

**2.** Rule 56(c) F.R.Civ.P.

butions and/or accruals on or after August 1, 1983, are actuarially computed based upon newly adopted merged gender mortality tables.

If these changes accomplish for plaintiff Bessie Hannahs all to which the law entitles her, summary judgment will lie.

Plaintiff criticizes the post-*Norris* NYSTRS computations because they indulge in "midpointing" rather than "topping up." "Topping up" means increasing the benefits of the disadvantaged (here, women teachers) to the more favorable rate. "Midpointing" means doing what the NYSTRS has done: using "merged gender mortality tables." In this context, merger equals midpointing. Because the male actuarial tables indicate shorter life expectancies than those of women, each male retiree loses a few dollars a year in his annual allowance from what he would receive if the post-*Norris* relief followed "topping up." [3] Plaintiff Hannahs condemns this remedy because it "advantages the previously disadvantaged group [women] at the expense of other employees [men] creating a new group of disadvantaged people." Main brief at 11. This is said to contravene *Norris* and the New York State Constitution.

■ At first blush one might question, although defendants do not, the standing of a woman plaintiff to complain of inequities to men. But I am asked as a court of equity to reach an equitable result. Equity properly considers effects of its decree and the underlying circumstances upon third parties, whether represented in the litigation or not. Furthermore, "topping up" would give both men *and* women larger payouts; men's amounts would not be reduced, and women's amounts would be "topped off" to equal them. So I consider the merits of plaintiff's objections.

A. *Norris Considerations*

■ The parties brief at length what the Supreme Court did or did not say in *Norris* about "topping up." The dialogue becomes ever more esoteric. The exegesis turns upon overlapping footnoes in majority and concurring footnotes. Meaning no disrespect, one is reminded of the ancients seeking oracular wisdom by killing a sacred pigeon and examining its entrails for clues.

Thus, Justice O'Connor, concurring on the question of relief in *Norris*, said in text 463 U.S. at 1111, 103 S.Ct. at 3513: "I would require employers to ensure that benefits derived from contributions collected after the effective date of our judgment be calculated without regard to the sex of the employee." At that point she drops footnote 4, which begins: "In other words, I would require employers to use longevity tables that reflect the average longevity of all their workers." Justice O'Connor goes on to argue in footnote 4 that prospective relief should not require employers to "top up" benefits by using male-longevity tables for all workers. First, she observes that the Equal Pay Act, 29 U.S.C. § 206(d)(1), does not require that result. Second, she argues that any principle of "topping up" inherent in the Equal Pay Act in inimical to a pension plan "whose entire function is actuarially to balance contributions with outgoing benefits"; topping up would inappropriately calculate benefits "on the basis of tables that do not reflect the composition of the work force."

In footnote 12 to his majority opinion on the issue of relief, Justice Powell says: "I agree with Justice O'Connor that only benefits derived from contributions collected after the effective date of the judgment need be calculated without regard to the sex of the employee." He then refers to Justice O'Connor's discussion at page 1111, 103 S.Ct. at 3513; but it is not clear whether Justice Powell meant by that approving reference to embrace Justice O'Connor's footnote 4. The only reference Justice Powell makes to topping up appears in *his* footnote 11, dropped from the text at 1106, 103 S.Ct. at 3511. But the text demonstrates that what was at issue was retroactive, not prospective relief. Similarly, the Second Circuit's discussion in *Spirt II* at 27 of the *Norris* reference to topping off takes place within the context of retroac-

---

**3.** See schedules B–1—B–4 to Johansen affidavit.

tive relief. As Second Circuit acknowledges: "The absence from the majority opinion of any mention of the decent's preferred resolution of the case leaves us somewhat uncertain as to the meaning of the *Norris decision.*" *Id.* at 28.

My own view is that neither *Norris* nor *Spirt II* mandate a topping up in the structuring of a prospective relief. On the contrary: I am persuaded by Justice O'Connor's analysis that topping up would be inconsistent with the main thrust of these cases, namely, to calculate benefits on the basis of tables that fairly reflect the composition of the entire work force. "Midpointing" achieves that purpose.

**B. *State Law Considerations***

■ Secondly, plaintiff argues that topping up in prospective relief is required by Article V, § 7 of the New York State Constitution, which prohibits a reduction in benefit levels previously applying to public employees.

My conclusion that Title VII of the federal Civil Rights Act militates against topping up for prospective relief disposes of this argument. That is because federal law declared in Title VII takes precedence over state constitutions and statutes. *Kirkland v. New York State Department of Correctional Services,* 711 F.2d 1117, 1132 n. 18 (2d Cir.1983); *Guardians Association of New York City Police Department Inc. v. Civil Service Commission,* 630 F.2d 79, 104–105 (2d Cir.1980), *cert. denied* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). The New York courts recognize the same preemptive effect of federal law over state constitutional and statutory enactments. *Michael v. Bellamy,* 80 A.D.2d 147, 437 N.Y.S.2d 977 (1st. Dept.1981), appeal dismissed 55 N.Y.2d 1036, 449 N.Y.S.2d 1031, 434 N.E.2d 1082 (1982), motion for leave to appeal denied 57 N.Y.2d 603, 454 N.Y.S.2d 1027, 440 N.E.2d 798 (1982).

I have considered the plaintiff's other arguments. None of them pursuade me that the plaintiff has not received all the relief to which she is entitled by law.

## CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to dismiss the complaint in this action with prejudice and without costs.

It is So Ordered.