Adele **GRAHAM** and Tamaara Danish, individually and as representatives of a class of persons similarly situated, Plaintiffs,

v.

**STATE OF NEW YORK, DEPARTMENT OF CIVIL SERVICE; Edward V. Regan, as Comptroller of the State of New York; Mario Cuomo, as Governor of the State of New York, Defendants.**

No.  84 Civ. 4546 (WCC).

United States District Court, S.D. New York.

July 14, 1989.

As Amended July 21, 1989.

James I. Meyerson, New York City, Adele Graham, Santa Fe, N.M., for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Nancy Miller Lerner, Jan P. Ryan, Ellen J. Fried, Asst. Attys. Gen., of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This opinion revisits a decision rendered by this Court in February, 1987. *Graham v. State of New York, Department of Civil Service, et al.*, 653 F.Supp. 1363 (S.D.N.Y. 1987) (Conner, J.). While that decision was on appeal to the Court of Appeals for the Second Circuit, the Supreme Court issued an opinion bearing directly on the question I had previously faced. As a result, the court of appeals, 861 F.2d 381, remanded this case to me in light of *Florida v. Long,* — U.S. ——, 108 S.Ct. 2354, 101 L.Ed.2d 206 (1988).

In my earlier decision, familiarity with which is presumed, I held that plaintiff Adele Graham was entitled to summary judgment on the issue of retroactive relief, in her action challenging defendant New York State's use of gender-based actuarial tables in determining the amount of monthly credit an employee of the State receives toward the cost of health care insurance after retirement. Since *Long* has undermined my earlier decision, and since I find Graham's alternative grounds for retroactive relief unpersuasive, plaintiff's claim for such relief is dismissed.

## BACKGROUND

Upon retirement, an employee of the State of New York ("the State") receives from the State a monthly credit toward the cost of his health care insurance based on the amount of unused sick leave he has accumulated by the time he retires. N.Y. Civ. Serv. Law § 167(4) (McKinney 1983). The amount of this monthly credit is fixed at the time of the employee's retirement, and is paid on his behalf for the remainder of his lifetime. *Id.* In calculating the amount of the credit, the State assigns a dollar value to the employee's unused sick days by multiplying the number of unused sick days by the employees's daily rate of pay at the time of his retirement. *Id.* Next, using actuarial tables, the State computes the proper monthly contributions by dividing this total dollar value by the number of months in the employee's remaining life expectancy. *Id.* The State makes these monthly contributions toward the employee's insurance plan premiums, in addition to the State's ordinary contribution, with the employee paying any leftover premium. *Id.*

Prior to August 1, 1983, the State utilized gender-based actuarial tables to calculate the monthly contributions. These tables showed longer life expectancies for women than for men, and therefore produced lower monthly contributions for women. However, on August 1, 1983, in accordance with the Supreme Court's decision in *Arizona Governing Committee for Tax Deferred Annuity & Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), the State abandoned gender-based actuarial tables in favor of unisex actuarial tables, thereby equalizing the monthly benefits paid for men and women who retired after that date.

Plaintiff Adele Graham ("Graham") retired from her position as a staff attorney in the State's Division of Human Rights in 1981, two years prior to *Norris*. She brought this action against the State and certain state officials, alleging that the use of gender-based actuarial tables prior to August 1, 1983 violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1982), the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), the fourteenth amendment to the United States Constitution, and article I, § 11 of the New York Constitution. She proposes to represent a class of female

employees who retired prior to August 1, 1983, and seeks on their behalf a retroactive award of the difference between the contributions paid on their behalf and those paid for retired male employees.[1]

## DISCUSSION

### I. The Impact of *Florida v. Long*

*Long* is the latest in a trilogy of Supreme Court opinions confronting the problem of pension plans that discriminate on the basis of sex. The first case in the trilogy, *City of Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), held that a pension plan requiring female employees to make larger contributions than male employees violated Title VII of the Civil Rights Act of 1964. The second, *Arizona Governing Committee for Tax Deferred Annuity & Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), found that Title VII prohibits an employer from offering its employees the option of receiving retirement benefits from one of several companies selected by the employer, all of which pay lower monthly retirement benefits to a woman than to a man who has made the same contributions. The *Norris* Court further precluded retroactive relief, holding that benefits derived from contributions made prior to its decision in *Norris* could be calculated as provided by the existing terms of the employer's plan. *Id.* at 1075, 103 S.Ct. at 3494. Thus, *Manhart* prohibited unequal contributions, and *Norris* prohibited unequal benefits.

Finally, in *Long*, the Court addressed the question of whether *Manhart* placed employers on notice that optional pension plans offering sex-based *benefits* violated Title VII and therefore justified retroactive relief from the date of that decision. The *Long* Court held that *Norris*, and not *Manhart*, "is the controlling liability date and that liability may not be imposed for pre-Norris conduct." *Long*, 108 S.Ct. at 2359.

In *Long*, Justice Kennedy identified three criteria for determining whether retroactive awards are appropriate in Title VII cases involving the use of gender-based actuarial tables. The first is whether *Manhart* clearly defined the employer's obligations under Title VII. The second is "whether retroactive awards are necessary to the operation of Title VII principles by acting to deter deliberate violations or grudging compliance." The third is the effect of retroactive liability on the financial viability of pension funds and the contractual rights of male employees. *Id.* at 2359. Based on his application of the three foregoing criteria, Justice Kennedy concluded that "the effective date of our decision in *Norris* provides the appropriate limit on retroactive liability in this case." *Id.* However, the Court left open the question of relief for pre-*Norris* retirees who seek to have their benefits adjusted from the date of that decision, where the adjustment would not require an infusion of new funds from the employer or infringe the contractual rights of male retirees. *Id.* at 2364.

### II. Plaintiff's Preliminary Argument In Favor of Retroactive Relief

Plaintiff first argues that my earlier decision withstands *Long* because this case involves contributions, as in *Manhart*, and not benefits, as in *Norris* and *Long*. I disagree. In my prior decision, I did not resolve whether the pre-*Norris* New York scheme involved unfair contributions or benefits. I now determine that the case involves benefits, since under the pre-*Norris* New York plan, women received smaller monthly credits from the state than men. The contributions required for men and women were equal under the New York plan: both male and female employees "contributed" whatever sick days they had not previously used, and their total credit was computed by multiplying the unused days by their daily wage at the time of retirement. Although it is true

---

1. The motion now before me deals solely with the issue of retroactivity under Title VII, and not with plaintiff's other causes of action sounding under the United States constitution, the New York State constitution, § 1983, or arising under contract law. Nor does this motion prejudice defendants' right to pursue the defenses raised in their answer.

that in order to attain the same monthly benefits as their male counterparts, female employees would have had to contribute more sick days, they did not do so in practice. Therefore this case, like *Norris*, must be viewed as a "benefits" case, and is governed by the Court's holdings in *Norris* and *Long*.

### III. Applying *Long* to the Current Case

Each of the three factors considered by the *Long* Court militates against retroactive relief in the case I am now reconsidering.

#### A. *Notice*

With respect to notice, Justice Kennedy concluded that because *Manhart* (1) had limited its holding to unequal contributions, (2) had explicitly left open the issue of whether Title VII precluded unequal benefits, (3) had been supported by a bare majority of the Justices, and (4) had been construed in varying ways by different courts, the decision did not alert pension-fund administrators that unequal benefits violated Title VII. Thus, under the reasoning of *Long*, New York cannot be held to have been given notice by *Manhart* that unequal *benefits* were discriminatory, because *Manhart* decided only that unequal *contribution* requirements violated Title VII.

Plaintiff also claims that if defendants were not put on notice by *Manhart*, then notice was given by decisions reached in a New York state court and/or the Court of Appeals for the Second Circuit. I find that neither of the decisions referred to by plaintiff was sufficient to give defendants pre-*Norris* notice that the use of sex-based actuarial tables was prohibited for the calculation of post-retirement health benefits.

In *New York State Department of Civil Service v. New York State Human Rights Appeal Board*, 66 App.Div.2d 309, 414 N.Y.S.2d 46 (1979), the court confirmed an administrative determination that pregnancy-related disabilities should be treated the same as other types of temporary physical disabilities for the purposes of receiving medical benefits under the New York State Health Insurance Program, and that women should not be required to enroll for family coverage in order to obtain maternity benefits. First, the case did not provide adequate notice because it was ambiguous as to whether it addressed unequal benefits or unequal contributions.

> An employer which offers a comprehensive individual health insurance plan that denies benefits for pregnancy and childbirth clearly offers a less comprehensive plan to its female employees than to its male employees. A requirement that female employees must pay more for comprehensive coverage to include medical conditions unique to their sex than male employees pay for comprehensive coverage including all conditions unique to their sex is patently discriminatory.

*Id.* 414 N.Y.S.2d at 49. Second, the case cannot be used as the basis for providing retroactive relief to plaintiff, because it did not find discrimination under Title VII, but under the state's Human Rights Law. Moreover, its holding was limited to pregnancy-related disabilities. A finding that New York State's Human Rights Law requires that pregnancy be covered by a state-sponsored comprehensive insurance plan does not inform the State that calculating contributions to a health care plan for retired state employees using sex-based actuarial tables is impermissible under Title VII.

The Second Circuit decision that plaintiff claims could have given defendants notice is *Spirt v. TIAA–CREF*, 475 F.Supp. 1298 (S.D.N.Y.1979), *aff'd in part and rev'd in part*, 691 F.2d 1054 (2d Cir.1982), *vacated*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 *modified*, 735 F.2d 23 (2d Cir.), *cert. denied* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). *Spirt* involves a situation similar to the one addressed in this case, namely unequal benefits calculated from gender-based actuarial tables, but significantly was still pending on appeal when the *Norris* decision was handed down by the Supreme Court. The final *Spirt* decision by the Second Circuit was not issued until approximately one year after *Norris*. So, while plaintiff is correct about the duty

of agencies to follow the decisions of the circuit courts in the jurisdictions in which they are located, this duty attaches only to final decisions. If the rule were otherwise, the administration of agencies would be unmanageable because agencies might be required to alter their behavior numerous times as a case made its way through the appeals process.

### B. *Deterrence*

*Long* also establishes that deterrence furnishes no justification for granting plaintiff retroactive relief. Just as Florida immediately complied with the Court's decision in *Norris*, New York swiftly erased the discriminatory aspects of its benefits plan after the Supreme Court's ruling. Where the state has quickly and willingly conformed with the law, a punitive measure is unwarranted. *Long*, 108 S.Ct. at 2362 ("In the pension context, we have considered whether retroactive awards are necessary to further the purposes of Title VII and to ensure compliance with our decisions, and we have concluded that retroactivity is not required.").

### C. *Maintaining the Financial Viability of Pension Funds and Respecting the Contractual Rights of Male Employees*

A retroactive remedy requires additional money. There are only three possible sources for this money: depleting the fund, requiring an infusion from the employer, or cutting the benefits of male retirees. In *Long*, the Supreme Court declined to require the employer to pay the additional money required. Justice Kennedy wrote, "[r]etroactive awards, applied to every employer-operated pension plan that did not anticipate our decision, would impose financial costs that would threaten the security of both the funds and their beneficiaries." *Id.* at 2362–63. The Court also precluded retroactive relief which would result in diminishing the benefits paid to male retirees who had made their contributions expecting a particular return, and had a concomitant contractual right to rely on receiving a fixed amount of benefits upon retiring. *Id.* at 2362 ("resulting harm to other retirees as innocent third parties" militates against applying the rule retroactively). Although the Court's holding was limited to denying retroactive relief, *Long*'s dictum suggests that a retroactive award which obtains its extra money by diminishing the benefits paid to male retirees who had no contractual right to a fixed level of benefits or rate of return on their contributions might be permissible. *Long*, 108 S.Ct. at 2364.

A different case, and a different assessment of retroactivity, might result under pension plan structures which do not provide retirees with a contractual right to a fixed level of benefits or rate of return on contributions. *See Spirt v. Teachers Insurance & Annuity Assoc.*, 735 F.2d 23, 28 (2d Cir.1984). There, an award for future increase may require neither additional funding by the State or employer nor violation of contractual rights of other retirees. *Id.* at 2364.

Plaintiff argues that this case is the kind of exception anticipated by Justice Kennedy in *Long*, and given body by the Second Circuit in *Spirt*, because it does not involve a pension fund accumulated under actuarial assumptions, Plaintiff's Memorandum of Law after Remand at 4–6, will not impose an onerous financial burden on the state, *id.*, and will not upset a "fixed and predetermined level of benefits" owing to retirees. *Id.* at 3.

An examination of *Spirt* explains why retroactive relief was permissible there, but impermissible under the circumstances of this case. In *Spirt*, the court of appeals allowed a retroactive award after finding that neither the employer nor the plan would be burdened with any additional financial obligations, and there would be no reduction in the annuities to which male retirees were contractually entitled. This was so, the court reasoned, because the plan did not guarantee male retirees a certain stream of income. 735 F.2d at 27. Instead, the plan expressly informed participants that the income received from the annuity would vary each year, reflecting the yield of the securities in the plan's portfolio. *Id.* Thus, higher payments to

women could be financed by reducing the payments to men, without requiring an infusion of money from the state. *Id.* at 27–28.

The New York scheme in the present case cannot be analogized to the pension plan in *Spirt.* Although under the plan here in question male employees of New York State do not make monetary contributions to any fund during the course of their employment, they are certainly aware that pay for unused sick days may be applied to reduce their health plan premiums when they retire. Moreover, they are informed upon retiring that under this plan the state will make a specified monthly contribution to their health plans for the rest of their lives. Thus, male employees "contribute" sick days, and, unlike their counterparts in *Spirt,* have been led to expect a specific level of retirement benefits to which they have an at least arguable contractual entitlement.

Granting plaintiff's request for relief to females who retired before August 1, 1983 would constitute a retroactive award necessitating an infusion of funds. Either the funds would be supplied by the state, *see* McCracken Affidavit, thereby imposing the kind of fiscal hardship avoided in *Spirt* and prohibited by *Long,* or they would be obtained by diminishing the benefits promised by the State to male retirees, also deviating from *Spirt* and violating *Long.* Therefore, retroactive relief is impermissible here.

Having weighed the three factors recognized by *Long,* I must deny plaintiff's request for retroactive relief.

## CONCLUSION

For the foregoing reasons, my Opinion and Order dated February, 1988 is vacated and plaintiff's claim for retroactive relief under Title VII is dismissed.

SO ORDERED.