Adele GRAHAM and Tamaara Danish, individually and as representatives of a class of persons similarly situated, Plaintiffs–Appellants,

v.

STATE OF NEW YORK, DEPARTMENT OF CIVIL SERVICE; Edward V. Regan, as Comptroller of the State of New York; Mario Cuomo, as Governor of the State of New York, Defendants–Appellees.

No. 956, Docket 89–9119.

United States Court of Appeals, Second Circuit.

Argued April 5, 1990.

Decided June 28, 1990.

James I. Meyerson, New York City (Adele Graham, Santa Fe, N.M., of counsel), for plaintiffs-appellants.

Nancy M. Lerner, New York City, Asst. Atty. Gen. of the State of New York (Robert Abrams, Atty. Gen. of the State of New York, O. Peter Sherwood, Sol. Gen., Ellen J. Fried, Asst. Atty. Gen., of Counsel), for defendants-appellees.

Before KAUFMAN, FEINBERG and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Adele Graham on behalf of herself and a proposed class of female employees of the State of New York who retired prior to August 1, 1983, appeal from a judgment entered in the United States District Court for the Southern District of New York (Conner, J.) dismissing their claim for retroactive relief in their suit challenging the State's use of sex-based actuarial tables to determine monthly credits toward the cost of retirees' health insurance. Because we agree with the district court that such relief is inappropriate in light of the Supreme Court's decision in

*Florida v. Long,* 487 U.S. 223, 108 S.Ct. 2354, 101 L.Ed.2d 206 (1988), we affirm.

## BACKGROUND

New York Civil Service Law provides that retired state employees may participate in the health insurance plan established for state employees. N.Y.Civ. Serv.Law § 163(2) (McKinney 1983). The State of New York ("the State") pays part of the cost of this insurance and the balance is paid by the retired employee in the form of deductions from his or her monthly pension. A retiree's monthly contribution toward the cost of health insurance may be reduced through the application of a monthly credit based on the amount of the employee's accumulated but unused sick leave at the time of retirement. Sick leave credits are converted to a dollar amount which is used to reduce that portion of the retiree's health insurance premium paid by the retiree and to increase *pro tanto* that portion paid by the State.

As Judge Conner cogently explained, the amount of this monthly credit is determined at the time of the employee's retirement, and is paid by the State on her behalf for the remainder of her lifetime. N.Y.Civ. Serv.Law § 167(4) (McKinney 1983). In calculating the amount of the credit, the State assigns a dollar value to the employee's unused sick days by multiplying the number of unused sick days by the employee's daily rate of pay at the time of retirement. *Id.* If this dollar amount is greater than $100, the State, using actuarial tables, computes its monthly payment for unused sick leave by dividing this total dollar value by the number of months in the employee's remaining life expectancy. *Id.* The State then adds the sick leave increments to the State's base contribution to the retiree's insurance premiums. The employee pays the portion of the monthly premium beyond the State's base contribution plus sick leave increment.

Pertinent to this appeal, prior to August 1, 1983, the State used gender-based actuarial tables to calculate its monthly sick leave payments under section 167(4). Because these actuarial tables indicate that women live longer than men, the statutory formula produced lower monthly State unused sick leave payments for female than for male retirees possessing the same amount of unused sick leave and earning the same salary upon retirement. However, on August 1, 1983, in accordance with the Supreme Court's decision in *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans et al. v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983),[1] the State abandoned its practice of using sex-differentiated actuarial tables in favor of unisex tables, which had the effect of equalizing the monthly payments in respect of unused sick leave for similarly situated men and women who retired after that date. *See Graham v. State of N.Y., Dept. of Civil Service,* 716 F.Supp. 802, 803 (S.D. N.Y.1989). Women who retired between April 25, 1978 and July 31, 1983, however, remain subject to the disparity that resulted from the State's initial use of gender-based actuarial tables.

Plaintiff Adele Graham ("Graham")[2] served as a staff attorney in the State's Division of Human Rights until her retirement in 1981, two years prior to *Norris.* At that time, the State calculated her monthly health insurance credit using sex-differentiated actuarial tables. She brought this action against the State, proposing to represent a class of female employees who retired prior to August 1, 1983, seeking a retroactive award of the difference between the payments made on their behalf and on behalf of male retirees. The complaint alleged that the use of gender-based actuarial tables prior to August 1, 1983 violated Title VII of the Civil

---

1. In *Norris,* the Supreme Court held that unequal pension benefits for male and female employees based on actuarial tables reflecting women's greater lifespans violates the sex discrimination prohibitions of Title VII.

2. Tamaara Danish initially sued as a class representative as well. However, she subsequently abandoned her claim in the district court as she had not yet retired when the litigation began and the State has ceased its use of the sex-based actuarial tables at issue in the case.

Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1982), the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), the fourteenth amendment to the United States Constitution and article I, § 11 of the New York Constitution.

The parties cross-moved for summary judgment on the issue of whether the proposed class was entitled to the retroactive relief demanded. In February 1987, Judge Conner granted the plaintiffs' motion concluding that the proposed class was indeed entitled to such relief. *See Graham v. State of N.Y., Dept. of Civil Service*, 653 F.Supp. 1363 (S.D.N.Y.1987). He reasoned that the Supreme Court's decision in *City of Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), which held that unequal pension plan contributions for male and female employees based on sex-differentiated actuarial tables violates Title VII, made clear that the State's use of such tables to calculate health insurance credits was illegal. The State appealed the district court's decision.

While the appeal was pending before this court, the Supreme Court announced its decision in *Florida v. Long*, in which it held that *Norris*, rather than *Manhart*, establishes the appropriate date for commencing liability for employer-operated pension plans that offered discriminatory benefits. *Manhart*, the Court reasoned, did not place employers on notice that optional pension plans offering sex-based benefits violated Title VII because its holding was carefully limited to unequal *contributions*, as distinct from *benefits*. Accordingly, pension fund administrators could have reasonably concluded that the decision was confined to sex-based contributions and did not prohibit plans from offering sex-differentiated benefits. *Long*, 487 U.S. at 233, 108 S.Ct. at 2361. We remanded the case to the district court for reconsideration in light of *Long*.

On remand, the district court vacated its earlier opinion and dismissed the plaintiffs' claim for retroactive relief.[3] The court rea-

soned that in its initial decision it had not decided whether New York's health insurance credit scheme involved sex-differentiated contributions or benefits, a critical distinction under *Long*. Upon reconsideration, the court concluded that the practice at issue involves benefits rather than contributions, and applying the three factors set forth in *Long*, the court concluded that retroactive relief would be impermissible under the circumstances of this case. This appeal followed.

## DISCUSSION

In *Florida v. Long*, state employees brought a class action alleging that Florida's pension plan system violated Title VII because it offered state retirees a sex-based annuity option that paid males lower monthly payments than females. The plaintiffs sought retroactive compensation for underpayment of benefits contending that *Manhart* had put the state on notice that its use of sex-based actuarial tables in the calculation of pension benefits was illegal. The district court agreed, awarding the class the difference between the benefits male retirees did receive and the benefits they would have received had the Florida system used unisex mortality tables. The Eleventh Circuit affirmed.

In reversing the Eleventh Circuit, the Supreme Court reiterated the three criteria that must be considered in determining the availability of retroactive relief in Title VII cases involving the use of gender-based actuarial tables.

> The first is to examine whether the decision established a new principle of law, focusing, in this context on whether *Manhart* clearly defined the employer's obligations under Title VII with respect to benefits payments. The second criterion is to test whether retroactive awards are necessary to the operation of Title VII principles by acting to deter deliberate violations or grudging compliance. The third is to ask whether retroactive liability will produce inequitable results

---

**3.** The plaintiffs' withdrew their state and federal constitutional claims, as well as their claims under 42 U.S.C. § 1983 by stipulation.

for the States, employers, retirees and pension funds affected by our decision. *Long,* 487 U.S. at 230, 108 S.Ct. at 2359. Applying these factors, we conclude, as did the district court, that retroactive relief would be inappropriate under the circumstances presented here.

■ At the outset, we must address plaintiffs' contention that *Long* is not dispositive of this case as *Long* involved the use of gender-based actuarial tables in the pension context. They contend that because *Long* is factually distinguishable from this case which involves not a fixed pension fund but a health benefit financed with annual appropriations, its reasoning is not instructive here. However, we do not believe that the analysis and rationale set forth in *Long* are so limited.

While plaintiffs correctly note that *Long* involved a fixed pension fund and that one of the Court's reasons for precluding a retroactive award in that case was a desire to protect fixed pension funds from the potentially catastrophic economic impact of such awards, *id.* at 235–36, 108 S.Ct. at 2362–63, plaintiffs underestimate the usefulness of the decision in assessing the appropriateness of retroactive relief in related Title VII contexts. The *Long* analysis is sensitive to the difference between pension benefits, which are typically paid out of fixed funds, and benefits like the one at issue here, which are financed with annual appropriations. Fixed pension funds may not be able to support retroactive awards which could interfere with the fund's "financial calculus ... that determines contribution rates to support a predicted level of payments." *Id.* at 238, 108 S.Ct. at 2364. In such cases, the third factor of the *Long* retroactivity analysis— whether retroactive liability will produce inequitable results for the states, employers, retirees and pension funds affected— will weigh heavily against retroactive relief. Where no fixed fund is at issue, analysis under the third factor may suggest that a retroactive award is warranted. Thus, *Long*'s flexible analysis and rationale are instructive in a variety of factual contexts.

Graham's reliance on *State v. Commission on Human Rights and Opportunities,* 211 Conn. 464, 559 A.2d 1120 (1989), for the proposition that *Long* should be construed narrowly to apply only to pensions is misplaced. That case was decided on state law grounds and the court specifically stated that *Long* was not binding on its interpretation of Connecticut's antidiscrimination statutes. *State v. Commission,* 559 A.2d at 1128. While the court noted the similarities between Title VII and the Connecticut law, it also acknowledged that the state statute contemplates broader relief than its federal counterpart. *Id.* at 1128–29. Accordingly, the narrow interpretation of *Long* adopted by the Connecticut court, resulting in a broader retroactive award in that case, is not dispositive here.

■ Applying the *Long* analysis to the facts before us, we agree with the district court that retroactive relief is inappropriate under the circumstances presented in this case.

*Notice*

The first factor to be considered in determining whether a retroactive award is appropriate is whether the employer was on notice that its conduct was illegal prior to the judicial determination of its liability. Graham argues that the State was on notice because the practice at issue involves discriminatory *contributions* invalidated in *Manhart* which was decided in 1978, rather than *benefits* which were not clearly held to be illegal until the Supreme Court's 1983 decision in *Norris.* Although the characterization of the State's practice is not free from ambiguity, we agree with the district court that the State's health credit scheme is properly viewed as one involving unequal benefits rather than contributions.[4]

---

**4.** The State suggests that Judge Conner's characterization of the case as one involving discriminatory benefits rather than contributions is a question of fact that should not be disturbed by this Court unless it is clearly erroneous. We do not agree. The facts are not disputed here. The parties disagree as to the legal significance that should be accorded them. Accordingly, we review the district court's characterization of the State's practice *de novo* as it is a mixed question

Under the State's program, similarly situated retirees paid into the system equally—they turned over to the State their accumulated but unused sick days. The inequality came at the pay-out stage. Using gender-based actuarial tables, the State converted equal payments into disparate pay-outs in the form of credits toward the retiree's health insurance. Thus, a male retiree with ten unused sick days would receive a larger credit toward his health insurance than a similarly situated female retiree. To be sure, these disparate benefits resulted in females having to contribute more toward the cost of their health insurance than their male counterparts. However, this is a function of the unequal value the State assigned the objectively equal unused sick leave contributions of male and female retirees.

We are mindful that in the insurance context, the distinction between benefits and contributions is more a matter of semantics than substance. As the practice at issue here demonstrates, a co-insurance scheme using sex-differentiated actuarial tables involves both unequal benefits and unequal contributions depending upon the perspective from which one views the practice—the employee's or the employer's. From the female employee's perspective, the State's diminished contribution on her behalf requires that she contribute more toward the cost of her health insurance. From the State's perspective, however, it is providing unequal benefits to male and female retirees with identical attendance records and salaries. But the Supreme Court has determined that the distinction between contributions and benefits is critical to our inquiry. Because notice focuses on the knowledge of the State at the time it engaged in the discriminatory conduct, fairness requires that we view the practice from the State's rather than the retiree's perspective. Accordingly, we agree with the district court that this case must be viewed as a "benefits" case.

*Long* establishes that because *Manhart*'s holding was limited to unequal con-

tributions and because it explicitly left open the issue of whether Title VII precluded unequal benefits, *Manhart* did not put employers on notice that unequal benefits violate Title VII. Thus, as Judge Conner concluded, "under the reasoning of *Long*, New York cannot be held to have been given notice by *Manhart* that unequal *benefits* were discriminatory, because *Manhart* decided only that unequal *contribution* requirements violated Title VII." *Graham*, 716 F.Supp. at 805.

Moreover, even if we were to agree with plaintiffs that the health insurance scheme involves unequal contributions rather than benefits, given the ambiguities inherent in characterizing the State's practice in this case as a benefit or contribution, we would be reluctant to conclude that *Manhart* gave the State fair notice of the illegality of its practice. New York could have concluded in good faith that the health credit scheme involved unequal benefits. *See Long*, 487 U.S. at 230, 108 S.Ct. at 2359–60 (the decision in *Manhart* must have "clearly defined the employer's obligations under Title VII" to make retroactive award appropriate). Under these circumstances, we cannot say that *Manhart* put the State on notice.

Plaintiffs contend in the alternative that even if *Manhart* did not alert the State to the error of its ways, pre-*Norris* decisions of other courts put the State on notice that its practice was unacceptable. Judge Conner correctly rejected this argument.

Graham first points to *New York State Department of Civil Service v. New York State Human Rights Appeal Board*, 66 A.D.2d 309, 414 N.Y.S.2d 46 (3rd Dep't 1979), in which the court confirmed an administrative decision that pregnancy-related disability should be treated the same as other types of temporary physical disabilities for the purposes of eligibility for medical benefits under the New York State Health Insurance Program, and that women should not be required to enroll for

---

of fact and law. *See U.S. v. Yonkers Board of Education*, 837 F.2d 1181, 1218 (2d Cir.1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100

L.Ed.2d 922 (1988); *First National Bank of Cincinnati v. Pepper*, 547 F.2d 708, 710 (2d Cir. 1976) (Friendly, J.).

family coverage in order to obtain maternity benefits. We agree with the district court that this case did not put the State on notice that the use of gender-based actuarial tables in the calculation of health benefits violates Title VII. First, as Judge Conner noted, the decision is ambiguous as to whether it involved unequal benefits or contributions.[5] Furthermore, the court based its holding not on Title VII, the statute under which plaintiffs seek retroactive relief, but on the New York Human Rights Law. Finally, as the district court concluded, the State was not remiss for failing to extrapolate from the decision that the use of gender-based actuarial tables in calculating health benefits would violate Title VII since the court's holding was limited to the coverage of pregnancy-related disability under a state sponsored health plan.

Nor can we say that *Spirt v. TIAA–CREF,* 475 F.Supp. 1298 (S.D.N.Y.1979), *aff'd in part and rev'd in part,* 691 F.2d 1054 (2d Cir.1982), *vacated,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406, *modified,* 735 F.2d 23 (2d Cir.), *cert. denied,* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984), should have alerted the State prior to *Norris* that its practice was discriminatory. Although *Spirt* similarly involved unequal benefits calculated on the basis of gender-differentiated actuarial tables, it was still pending on appeal when *Norris* was decided. The State cannot be held to notice of an unlawful practice, and thus cannot be expected to change its policy, on the basis of a decision that is still wending its way through the appeals process and is therefore subject to change. *Cf. Long,* 487 U.S. at 233, 108 S.Ct. at 2361 ("Our close division in [*Norris* ] ... suggests that application of the earlier law [in *Manhart* ] to differential benefits was far from obvious.")

Graham contends that the district court confuses notice with duty, arguing that once a court says that use of sex-differentiated actuarial tables in calculating benefits is discriminatory, an employer then has notice of that concept even though no mandate has been specifically addressed to that employer. While this is true, it misses the point that an agency cannot be said to be on notice before the appeals process runs its course. Before that time, the State was merely on notice that the use of such tables was a live issue being resolved by the courts.

Finally, although the Connecticut Supreme Court has recently held that *Fitzpatrick v. Bitzer,* 390 F.Supp. 278 (D.Conn. 1974), *rev'd in part on other grounds,* 519 F.2d 559 (2d Cir.1975), *rev'd on other grounds,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), gave employers fair warning that use of sex-based actuarial tables to compute retirement benefits is a violation of Title VII, *see State of Connecticut v. Comm. on Human Rights,* 211 Conn. 464, 481, 559 A.2d 1120, 1129 (1989), we respectfully disagree.

In *Bitzer,* the district court ruled that Connecticut's state employee retirement system which provided reduced benefits for male retirees impermissibly discriminated against men. The State Retirement Act allowed women employees with 25 years of service to retire with pension rights five years earlier than men with identical service qualifications. The court noted that the likely reasoning of the legislature in affording women more favorable treatment was that it perceived them to be "the more dependent of the sexes and entitled to be sheltered from the rebuffs of life." *Bitzer,* 390 F.Supp. at 282. Thus, the discrimination invalidated in *Bitzer* was based not on objective sex-differentiated actuarial tables compiled from statistics, but rather on the

---

**5.** The court, in discussing the New York State Health Insurance Program, wrote that

An employer which offers a comprehensive individual health insurance plan that denies benefits for pregnancy and childbirth clearly offers a less comprehensive plan to its female employees than to its male employees. A requirement that female employees must pay

more for comprehensive coverage to include medical conditions unique to their sex than male employees pay for comprehensive coverage including all conditions unique to their sex is patently discriminatory.
*New York State Department of Civil Service v. New York State Human Rights Appeal Board,* 66 A.D.2d at 314, 414 N.Y.S.2d at 49.

discredited notion, based on a cultural stereotype, that women are somehow "more dependent" and in need of protection. By contrast, sex-differentiated actuarial tables are based not on cultural stereotypes but rather on accurate statistics that reveal an actual disparity in the lifespans of men and women. The tables reflect the biological fact that women, as a group, tend to live longer than men. Thus, the State's reliance on such data, although ultimately invalidated by the Supreme Court in *Norris*, was reasonable and quite distinguishable from the practices invalidated in *Bitzer*. Accordingly, we conclude that *Bitzer* did not give the State fair warning that its use of gender-based actuarial tables violated Title VII.

Because we conclude that this case involves unequal benefits and because we do not believe that the State was on notice prior to *Norris* that its health insurance credit practice was in violation of Title VII, we conclude that the first criterion of the *Long* test weighs against retroactive relief.

### Deterrence

The second factor to be considered in determining whether a retroactive award is appropriate is whether such an award is "necessary to the operation of Title VII principles by acting to deter deliberate violations or grudging compliance." *Long,* 487 U.S. at 230, 108 S.Ct. at 2359. Graham contends that New York knew as far back as 1979 that its practice had discriminatory effects. Accordingly, she argues, a retroactive award is necessary as a "spur or catalyst" to the State as an employer to "self-examine and to self-evaluate ... and to endeavor to eliminate, so far as possible, the last vestiges of their discriminatory practices." *United States v. N.L. Industries, Inc.,* 479 F.2d 354, 379 (8th Cir.1973) *quoted in Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975). We disagree.

As discussed above, we do not believe that the State was on notice of the illegality of its benefits scheme prior to the Supreme Court's 1983 decision in *Norris* which put to rest any uncertainty about the validity of sex-discriminatory benefits premised upon gender-based actuarial tables. It is undisputed that after *Norris* New York acted promptly to implement a sex-neutral plan with respect to post-August 1, 1983 retirees. While courts in Title VII cases have the power to fashion the most complete relief possible to eliminate the effects of past discrimination, the court must arrive at a " 'just result' in light of the circumstances peculiar to the case." *Id.* at 424, 95 S.Ct. at 2375 (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)). In view of the State's prompt and voluntary compliance with the law, a retroactive award against the State is not necessary to insure the fulfillment of Title VII's goals.

### Effect of Retroactive Liability on the State and Male Retirees

The final factor to be considered in our inquiry is whether retroactive liability will produce inequitable results for the States, employers, retirees and pension funds affected. *Long,* 487 U.S. at 230, 108 S.Ct. at 2359–60. We agree with the district court that a retroactive award would require either an infusion of State funds or a reduction in the benefits of male retirees, both of which are impermissible under *Long.*

In *Long,* the Supreme Court declined to award retroactive relief against a state pension fund for violations of Title VII. The Court was concerned that such an award would interfere with the "basic financial calculus of a pension plan that determines contribution rates to support a predicted level of payments." *Id.* at 238, 108 S.Ct. at 2364 (citation omitted). Unexpected payouts from the fixed pension fund would have created a deficiency "requiring additional funds from the State and other employers to meet the increased benefits liability or forcing the pension plan to violate its contractual benefit guaranty to other retirees." *Id.*

Plaintiffs correctly note that this case, unlike *Long,* does not involve a fixed pension fund, and therefore, there is no similar concern for protecting the integrity of a pension system accumulated under actuarial assumptions. However, this is not the end of our inquiry. The *Long* court, by

implication, also prohibited retroactive awards that would burden the State or a private employer with additional financial obligations. The Court distinguished *Spirt v. Teachers Insurance & Annuity Assoc.*, 735 F.2d 23 (2d Cir.1984), by noting that in that case, a retroactive award was permissible because "[t]here, an award for future increase may require neither additional funding by the State or employer nor violation of contractual rights of other retirees." *Long*, 487 U.S. at 240, 108 S.Ct. at 2364. By contrast, the *Long* Court explained, Florida "could not have done anything after [Norris] to eliminate [the resulting disparity in the pension fund] short of expending state funds." *Id.* (quoting *Norris*, 463 U.S. at 1095, 103 S.Ct. at 3505); *see also Spirt*, 735 F.2d at 28 (2d Cir.1984) (*Norris* contains a "prohibition of relief provisions that impose added financial burdens on employers or plans.") Accordingly, the Court reversed the retroactive award against the State.

Plaintiffs argue that because the retroactive relief they seek would require an additional appropriation of no more than $500,000 over an eleven year period that would not unduly burden the State treasury, it is not prohibited by *Long*. We are not persuaded. In *Long*, the Supreme Court specifically declined to "adopt the premise that the appropriateness of a retroactive award turns on a particular pension fund's current financial status." *Id.*, 487 U.S. at 237, 108 S.Ct. at 2363. Thus, the de minimus nature of the requested relief and the apparent relative ease with which the State could satisfy such an award are not dispositive.

Although plaintiffs have not proposed that the requested retroactive award be financed by reducing the health insurance benefits of pre–1983 male retirees, the *Long* court suggested that such financing might be appropriate where it would not interfere with the contractual rights of other retirees. *Id.* at 240, 108 S.Ct. at 2364–65. The Court noted that in *Spirt* we

upheld a retroactive award which could be funded by reducing the benefits of male retirees who had no contractual right to any specific level of benefits. Indeed, the explanatory literature provided to the retirees in *Spirt* explained that "[t]he ... annuity pays you a retirement income that varies year by year...." *Spirt*, 735 F.2d at 27. We relied on the unspecified nature of the benefits in upholding retroactive relief against the pension plan, concluding that under such circumstances, no inequity would result from reducing the benefits of male retirees.

We agree with the district court that here, by contrast, male retirees have at least a colorable contractual right to their current level of benefits. Although New York Civil Service Law § 167(4), which sets forth the health insurance credit scheme, does not guarantee that the benefits of employees under the plan will not be diminished, upon retirement employees were informed that the State would make a specified monthly contribution toward the cost of their health insurance for the remainder of their lives. That benefit statement may have induced reasonable reliance on the part of retirees who expected the specified monthly State contribution to supplement their fixed incomes and defray the cost of their health insurance. Under these circumstances, it would be inequitable to reduce benefits to male retirees to fund a retroactive award.[6]

### CONCLUSION

The teachings of *Florida v. Long* suggest that retroactive relief would be inappropriate under the circumstances of this case. Accordingly, the judgment of the district court denying plaintiffs claim for retroactive relief under Title VII is affirmed.

FEINBERG, Circuit Judge, concurring:

I concur in the result reached by the majority.

---

**6.** Moreover, even if we were to find that male retirees do not have a contractual right to the State-specified level of health insurance benefits, it would not affect our decision in view of

the fact that our analysis under the notice and deterrence factors of the *Long* test militates against a retroactive award.

Contrary to the majority view, I believe that this is a contributions case, not a benefits case. As the majority explains, under Civ.Serv.Law § 167(4) (the statute), New York assigns a dollar value to a retiring employee's unused accumulated sick days by multiplying the number of such days by the employee's daily rate of pay at the time of retirement. Next, using actuarial tables, New York divides that dollar value by the number of months the employee is expected to live. New York then adds the dollar amount of such sick leave increments to the State's own base contribution to a retiree's insurance premiums, and the retiree must pay the portion of the monthly premium beyond that amount out of his or her own pocket. Because, until August 1983, New York used gender-based actuarial tables to determine life expectancy, a female employee who retired at a given salary would thus have to contribute more to receive the same reduction in monthly health insurance costs as that enjoyed by a male employee who retired at the same salary. To put it another way, that female employee winds up paying more per month out of her pocket than does her similarly situated male counterpart.

I think that hypothetical figures will make my view of the statutory scheme clear. Imagine that the health insurance plan costs $20 per retiree per month, and that New York's base contribution is $5 per retiree. This leaves $15 per month that must be paid, which, under the statute, is partially paid for by the dollar equivalent of accumulated unused sick days of retirees. But, because of the use of gender-based actuarial tables, the unused sick days are worth different dollar amounts for two similarly situated retirees, one male and one female; the male employee's days are worth $5 per month, while the female's are only worth $4 per month. Thus, the male employee ultimately pays $10 per month out of his pocket, and the female pays $11 per month *for precisely the same health insurance*. This, as far as I can tell, is a case of unequal contributions rather than benefits.

However, I also agree, as the majority opinion thoughtfully points out, that the manner in which the statutory scheme works is complex, that New York could therefore reasonably have concluded that the challenged statutory scheme involved benefits and not contributions and that the Supreme Court's decision in *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), thus did not put New York on fair notice that it was violating Title VII. Majority opinion at 328. On this basis, I concur.